UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

SHEILA COLEMAN TULLY,                    )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )      CIVIL NO.  3:11cv266
                                         )
MICHAEL ASTRUE,                          )
Commissioner of Social Security,         )
                                         )
            Defendant.                   )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB).  42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3).

Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall

file a certified copy of the transcript of the record including the evidence upon which the findings

and decision complained of are based.  The court shall have the power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the [Commissioner], with or without remanding the case for a rehearing."  It also provides,

"[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall

be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law

Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2004 through her date last insured of March 31, 2008 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: status post-spinal fusion surgery in 1989 and depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform simple and repetitive light work as defined in 20 CFR 404.1567(b) with occasional kneeling, stooping, bending and crawling and no squatting, no climbing ropes, ladders or scaffolds in an environment relatively free of temperature and humidity extremes.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on January 1, 1967 and was 41 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from March 1, 2004, the alleged onset date, through March 31, 2008, the date last insured (20 CFR 404.1520(g)).

(Tr. 14-21).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on October 31, 2011. On February 7, 2012, the defendant filed a memorandum in support of the Commissioner's decision, and on February 21, 2012, Plaintiff filed her reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed an application alleging disability as of March 2004 (Tr. 12, 154–59). The Social Security Administration initially denied this application in September 2007 (Tr. 12, 74), and on reconsideration in October 2007 (Tr. 12, 75). Pursuant to Plaintiff's request (Tr. 84), in December 2009, an ALJ held a hearing, at which Plaintiff, a vocational expert, and a medical expert testified (Tr. 28-73). The ALJ issued his decision in February 2010, finding that Plaintiff had the residual functional capacity (RFC) to perform a range of simple, repetitive light work, that a significant number of jobs existed which she could perform, and that she was thus not disabled and not entitled to benefits (Tr. 12-21). This decision became final and appealable on May 5, 2011, when the Appeals Council denied Plaintiff's request for review (Tr. 1-3). *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action pursuant to 42 U.S.C. § 405(g).

Although Plaintiff alleged a disability onset of March 2004, the record contains few treatment records prior to 2006. Plaintiff underwent a consultative examination in 2008 and the examining physician diagnosed a history of osteoporosis and multiple fractures, hypertension, a "history of cardiovascular accident with no residual weakness," and a history of bronchitis (Tr. 247-50). Dr. Paul Madison, of the Midwest Pain Clinic, noted in February 2007 that his office had not seen Plaintiff since 2004 and had no records for her (Tr. 262).

Plaintiff received treatment from Heinsen Family Practice in November and December 2006 (Tr. 266-67). Records from these visits indicated that Plaintiff's affect was "normal and appropriate" (Tr. 266, 267).

Plaintiff continued to receive treatment from Heinsen Family Practice in 2007 (Tr. 268-69, 291-98). In January, Plaintiff was prescribed Klonopin for anxiety, but the treatment record also indicated that Plaintiff's affect was normal and appropriate (Tr. 268). According to a

February 2007 treatment note, Plaintiff exhibited normal affect and conversation (Tr. 269).

Plaintiff next received treatment in March, April, and May, and treatment records from these

visits document normal affect and conversation (Tr. 291, 293, 295). At the May visit, Plaintiff

reported that she was "feeling much less stress and feeling better" (Tr. 293).

On June 6, 2007, Plaintiff underwent a consultative examination with Dr. Perrin (Tr. 299-

304). Dr. Perrin noted that Plaintiff sought a disability evaluation for rheumatoid arthritis,

osteoarthritis, and osteoporosis that caused back pain (Tr. 299). He also noted past diagnoses of

bipolar disorder, depression, and anxiety, and noted that Plaintiff was not on medication for

bipolar disorder (Tr. 299). Plaintiff told Dr. Perrin that she had obtained a GED and was able to

perform "basic activities of daily living" (Tr. 300). Dr. Perrin observed that Plaintiff was alert

and oriented, and appropriately dressed and groomed (Tr. 300). He noted that Plaintiff followed

directions and commands without difficulty (Tr. 300). Her memory for recent and remote

medical events was "preserved" (Tr. 300). While Dr. Perrin noted that Plaintiff had difficulty

"mentally focusing on the task," he also noted that her intellectual function was "grossly normal"

(Tr. 300-01).

That same month, Dr. Corcoran, a state agency physician, reviewed Plaintiff's record to

conduct a residual functional capacity (RFC) assessment (Tr. 308-14). Dr. Corcoran found

Plaintiff capable of lifting 50 pounds occasionally and 25 pounds frequently, and able to

stand/walk and sit for six hours in an eight-hour day (Tr. 308). He found Plaintiff only partially

credible: "[T]he contentions regarding the severity of, and the related functional restrictions, are

not supported. The findings specified within this assessment are more consistent with the

appropriate medical findings and the overall evidence in [the] file than the allegations made by

claimant" (Tr. 312).

In August 2007, John T. Heroldt, Ed.D., HSPP performed a consultative examination of Plaintiff (Tr. 315-18). While he noted that Plaintiff indicated she did not know that the sun rose in the east, he did note that Plaintiff showed appropriate judgment (when asked what she would do if she found a stamped letter lying on the street, she responded that she would put it in a mailbox), understood common proverbs, and could identify similarities and differences in objects (Tr. 316). Dr. Heroldt found Plaintiff's memory to be below average (Tr. 316). Plaintiff had moderate difficulty with arithmetic (Tr. 317). She reported that her daily activities consisted of reading, watching television, straightening up the house, doing yard work, and playing cards (Tr. 317). Dr. Heroldt observed no looseness of thought; her thoughts flowed in a logical and coherent sequence (Tr. 317). Nor did Dr. Heroldt observe evidence of psychotic symptoms (Tr. 317). He found Plaintiff's cognitive capacity to be below average (Tr. 317). He diagnosed major depressive disorder, recurrent, severe; and borderline personality disorder (Tr. 317).

William Shipley, Ph.D., a state agency psychologist, conducted a mental RFC assessment and completed a Psychiatric Review Technique form in September 2007 (Tr. 329-31, 333-46). On the Psychiatric Review Technique form, he indicated diagnoses of major depressive disorder and borderline personality disorder (Tr. 336, 340). He determined that Plaintiff had mild restrictions in activities of daily living and in maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace (Tr. 343). He noted in the mental RFC assessment that Plaintiff had a "significant" work history (Tr. 331). Dr. Shipley acknowledged that Plaintiff "[m]ay have problems with concentration," but concluded that she was capable of simple, routine tasks (Tr. 331). Like Dr. Corcoran, Dr. Shipley found Plaintiff partially credible

(Tr. 331).

In October, Dr. Heinsen completed a Physical Residual Functional Capacity Questionnaire supplied by Plaintiff's attorney (Tr. 347-49). Dr. Heinsen described a series of physical limitations arising from Plaintiff's physical impairments, and also indicated that Plaintiff had "moderate depression/anxiety" (Tr. 348). He checked a box to indicate that Plaintiff was "[i]ncapable of even 'low stress' jobs" (Tr. 348).

Also in October, Dr. A. Lopez reviewed the record and affirmed Dr. Corcoran's RFC assessment (Tr. 350). Joelle J. Larsen, Ph.D., similarly reviewed and affirmed Dr. Shipley's findings and assessment (Tr. 351).

Plaintiff began treatment with Michiana Multi-Specialty Medical Group in December (Tr. 364-70). According to a diagnostic interview, Plaintiff had a history of drug and alcohol abuse, which was in remission since the summer of 2007 (Tr. 365). Maria Becker, Ph.D., HSPP, who conducted the interview, found Plaintiff's consciousness, attention, and concentration intact (Tr. 366). She found Plaintiff to be of average intellect (Tr. 366). Plaintiff's immediate recall and recent memory were intact (Tr. 366). Her functioning was stable (Tr. 366). Dr. Becker diagnosed major depression, recurrent, moderate, and anxiety disorder (Tr. 366).

Plaintiff cancelled some of her appointments with Michiana Multi-Specialty in January and March (Tr. 368). The record contains no treatment at Michiana Multi-Specialty after early June 2008 (Tr. 369-70).

Plaintiff began outpatient treatment at Porter-Starke Services in November (Tr. 475). According to an assessment conducted that month, Plaintiff's thought processes, including attention and concentration, were normal (Tr. 463). Her remote memory was impaired but her

thought content was normal (Tr. 463). This assessment noted diagnoses of moderate anxiety and moderate depression (Tr. 465).

Plaintiff testified that she obtained a GED and attended two years of college for nursing (Tr. 33). She withdrew from college after getting into a car accident (Tr. 34). She worked for seven years at Ford (Tr. 34). Plaintiff told the ALJ that there were days when there was nothing wrong with her physically but that there were days she could not get out of bed (Tr. 35). She explained that she could not get out of bed because she was in physical pain (Tr. 39). Plaintiff also noted that she had depression, but when asked whether her physical or mental impairments were more serious, Plaintiff responded, "Probably physical" (Tr. 36). Plaintiff denied using cocaine from 2000 to 2003 (Tr. 36). When the ALJ explained that a psychologist's report indicated she had used cocaine then, Plaintiff suggested that her mother gave that information to the psychologist (Tr. 36). Plaintiff conceded that at one time she had a problem with alcohol (Tr. 37-38). She last used cocaine when she worked at Ford (Tr. 38). Plaintiff had three strokes but they left no permanent damage other than her jaw sitting on the side a little bit (Tr. 41). She described her depression as wanting to sleep all the time (Tr. 42). She took medication and received counseling from Dr. Becker (Tr. 42). Plaintiff explained that she tended to feel better emotionally when she felt better physically (Tr. 59). Plaintiff also said she had trouble concentrating, including when she read or watched a movie (Tr. 61).

The ALJ then asked the vocational expert to consider a hypothetical person with Plaintiff's vocational profile who was limited to light work that involved no more than occasional kneeling, stooping, bending, and crawling; and no squatting or climbing ropes, ladders, or scaffolds (Tr. 69). Additionally, this hypothetical person required a work

environment relatively free of temperature and humidity extremes as well as work that did not require more than superficial interaction with the general public, coworkers, and supervisors (Tr. 69). This hypothetical person was also limited to simple and repetitive tasks (Tr. 69). The vocational expert testified that this person could perform such jobs as hand packager (1070 jobs in Indiana), mutual ticket checker (1360 jobs in Indiana), and electronics assembler (2250 jobs in Indiana) (Tr. 69). The ALJ then asked the vocational expert whether any light jobs with the same restrictions existed that such a person could do (Tr. 69). The vocational expert identified cashier (22,350 jobs in Indiana), information clerk (1,430 jobs in Indiana), and airline security representative (2,120 jobs in Indiana) (Tr. 70). The vocational expert indicated that his testimony was consistent with the information contained in the *Dictionary of Occupational Titles* (Tr. 70).

On cross-examination, the vocational expert indicated that all the light jobs he identified required superficial contact with the public (Tr. 71). He also noted that of the sedentary jobs, only the assembler position required working at a production rate (Tr. 71).

The ALJ found that Plaintiff had severe impairments of status post-spinal fusion surgery and depression (Tr. 14). He then found that, despite these impairments, Plaintiff retained the ability to perform a range of light work that involved only simple and repetitive tasks as well as the postural and environmental limitations that he posed in his hypothetical question to the vocational expert (Tr. 16-19). Citing the vocational expert's testimony, the ALJ determined that a significant number of jobs existed in the economy that Plaintiff could do (Tr. 20). Thus the ALJ determined that Plaintiff was not disabled under the Social Security Act and not entitled to benefits. (Tr. 21).

Plaintiff argues that the decision of the ALJ was not supported by the evidence, and that

the evidence shows that Plaintiff has serious psychological symptoms. However, the Commissioner points out that the ALJ's finding that Plaintiff could perform simple, repetitive unskilled work is consistent with Dr. Shipley's findings. Dr. Shipley acknowledged diagnoses of major depressive disorder and borderline personality disorder (Tr. 336, 340). Nevertheless, he determined that Plaintiff had only mild restrictions in activities of daily living and in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 343). He also noted that Plaintiff had not experienced any episodes of decompensation of extended duration (Tr. 343). The ALJ made similar findings(Tr. 15). Additionally, Dr. Shipley performed a mental RFC assessment, in which he concluded that despite her problems with concentration, Plaintiff was capable of simple routine tasks (Tr. 331). This conclusion also matches the ALJ's RFC finding (Tr. 16).

Dr. Shipley was not the only psychologist to make such a finding. In October 2007, Dr. Larsen reviewed and affirmed Dr. Shipley's findings and assessment (Tr. 351).The ALJ also cited findings from both consultative examinations that support the RFC finding. He noted that Dr. Perrin observed that Plaintiff was able to follow directions and commands without difficulty, had grossly normal intellectual functioning, and "preserved" memory for recent and remote events (Tr. 18, 300). The ALJ noted that at the August 2007 consultative examination, Dr. Heroldt found no looseness of thoughts or evidence of psychotic symptoms (Tr. 18, 318). According to Dr. Heroldt, Plaintiff showed appropriate judgment (when asked what she would do if she found a stamped letter lying on the street, she responded that she would put it in a mailbox), understood common proverbs, and could identify similarities and differences in objects (Tr. 316). Neither Dr. Perrin nor Dr. Heroldt opined that Plaintiff's mental impairments

prevented her from working.

The ALJ also cited treatment records in support of his RFC finding (Tr. 18-19). The ALJ explained, "In terms of her mental health issues, at most appointments, her affect is normal and appropriate, she is alert and oriented and she answers all questions appropriately" (Tr. 18). The 2006 records from Heinsen Family Practice note Plaintiff's "normal and appropriate" affect (Tr. 266, 267). Similarly, the Heinsen treatment records from March, April, and May 2007 note Plaintiff's normal affect and conversation (Tr. 291, 293, 295). No treatment records from Heinsen indicate any abnormal findings. In fact, the record from May 2007 indicates that Plaintiff reported feeling "much less stress" and "better" (Tr. 293). As the ALJ also explained, the initial evaluation from Michiana Multi-Speciality Medical Group in December 2007 also supported his finding that Plaintiff retained the mental capacity to work (Tr. 18). The ALJ correctly noted that according to the interview report, Plaintiff was oriented and her behavior appropriate, her attention and concentration were intact, and her functioning was stable (Tr. 18, 366).

As Plaintiff notes, Dr. Heinsen opined that Plaintiff's depression and anxiety rendered her incapable of undertaking even "low stress" jobs (Tr. 348). The ALJ acknowledged this opinion but rejected it (Tr. 19). Clearly, however, that rejection was consistent with the regulations. A treating physician's opinion is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). If it is not given controlling weight, it is accorded weight only to the extent that, among other things, it is supported by medical signs and clinical findings and is consistent with the record as a whole. *Id.* §

12

404.1527(d)(3), (4). The ALJ explained that Dr. Heinsen's opinions found on this form–pertaining to both Plaintiff's physical and mental impairments–were inconsistent with the treatment notes from Plaintiff's visits (Tr. 19). While the January 15, 2007, treatment notes indicated Plaintiff had been prescribed Klonopin for anxiety (Tr. 268), no other treatment note documented any treatment for or any problem arising from a mental impairment. The doctor's opinion was even inconsistent with the other information he recorded on the Physical Residual Functional Capacity Questionnaire. There, he described Plaintiff's depression and anxiety as "moderate" (Tr. 348). He did not explain why Plaintiff could not handle even low stress work in light of moderate, but not serious or severe impairments, nor did he cite any tests or objective medical evidence in support of his opinion. This too is sufficient reason under the regulations to discount his opinion. *See* 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

The relationship between Plaintiff and Dr. Heinsen provides additional reason to discount Dr. Heinsen's opinion. Dr. Heinsen was Plaintiff's general practitioner who treated Plaintiff's physical ailments. He was not a mental health specialist. As such, the ALJ could properly give his opinions regarding Plaintiff's mental impairments less weight. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist."). In fact, it is by no means clear if Dr. Heinsen qualified as a treating physician under the regulations. The record contains documentation of only seven treatment visits with him between November 16, 2006, and May 31, 2007 (Tr. 266-69, 291-98). *Cf.* 20 C.F.R. § 404.1527(d)(2)(I) ("Generally, the longer a treating source has treated you and the more times

you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give if it were from a nontreating source."). In the present case, the ALJ properly characterized Plaintiff's treatment history with Dr. Heinsen as "quite brief" and discounted it accordingly (Tr. 19).

Although the Plaintiff argues that she had a "serious" psychological problem and that the ALJ ignored it, the record clearly shows that the ALJ found Plaintiff's depression a severe impairment at step two of the disability determination inquiry (Tr. 14). In light of this impairment, the ALJ restricted the kind of work that Plaintiff could do and substantial evidence supports the restriction to simple, repetitive tasks that the ALJ imposed. In fact, the jobs that the vocational expert identified reflect even greater restrictions. The ALJ asked the vocational expert to identify jobs that not only were limited to simple and repetitive tasks, but also did not involve more than superficial interaction with the general public, coworkers, and supervisors (Tr. 69). The jobs that the vocational expert identified, and which the ALJ cited in support of his finding that Plaintiff retained the ability to perform a significant number of jobs in the national economy, included this additional restriction, which further accommodated Plaintiff's depression, the anxiety that Dr. Heinsen diagnosed, and the difficulty in dealing with others that Plaintiff described. Additionally, the vocational expert testified that of the sedentary jobs that he identified, only the assembler position required working at a production rate (Tr. 71). Thus, most of the jobs that the vocational expert identified not only involved only simple, routine tasks, but also required minimal interaction with other people and no production quotas. This well

accommodated the moderate difficulty in concentration, persistence, and pace that the ALJ and

Dr. Shipley acknowledged resulted from Plaintiff's mental impairment.

Plaintiff also argues that the ALJ ignored or rejected certain medical opinions, including

"the Social Security Administration's own experts' opinions." Pl. Br. at 16.  However, it is clear

that the ALJ's RFC finding is consistent with both the physical and mental RFC assessments that

the state agency reviewing physician and psychologist performed. Referring to Dr. Shipley's

evaluation, Plaintiff notes that the state agency physician found that Plaintiff would have

moderate difficulties in maintaining attention and concentration for extended periods and

moderate limitations in completing a normal workday and workweek without interruptions from

psychologically based symptoms. *Id.* at 17 (citing Tr. 329-30). Plaintiff argues that "[t]his is far

more restrictive than a mere inability to perform a simple repetitive task." *Id.*   It is undisputed,

however, that the ALJ found that Plaintiff had moderate difficulties maintaining concentration,

persistence, or pace (Tr. 15), and that notwithstanding the cited limitations that Dr. Shipley

found, Dr. Shipley nonetheless concluded that Plaintiff remained able to perform simple,

repetitive tasks (Tr. 331). And as noted above, the jobs that the vocational expert and ALJ

identified reflect greater restrictions in light of Plaintiff's mental impairment; they also preclude

more than superficial contact with the public, coworkers, and supervisors, and all but one do not

involve production quotas.

Plaintiff also argues that the ALJ did not give sufficient consideration to Plaintiff's

global assessment of functioning (GAF) scores. Pl. Br. at 11-12.  Yet, the ALJ had no obligation

to give these scores any deference. The Social Security Administration has unequivocally stated

in a final rule comment that "[t]he GAF scale . . . does not have a direct correlation to the

severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (2000).

*Accord Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ((citations and internal quotations omitted) ("Accordingly, nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score."). In any event, Plaintiff notes that she was assessed a GAF score as high as 58. Pl. Br. at 12. The Seventh Circuit has affirmed a finding of no disability when a claimant had a GAF score of 55. *See Griffith v. Callahan*, 138 F.3d 1150, 1152 (7th Cir. 1998).

As the Commissioner points out, The ALJ's assessment of Plaintiff's credibility also supported the ALJ's finding that Plaintiff retained the ability to work. Specifically, the ALJ found that Plaintiff was not credible to the extent that her statements concerning the severity of her symptoms and their limiting effects were not supported by the record evidence (Tr. 16-17). Plaintiff contests this credibility finding but must overcome a high burden to successfully do so, as courts give an ALJ's credibility determination much deference. "The ALJ's credibility determinations are entitled [to] special deference. . . ." *Castile v. Astrue*, 617 F.3d 932, 929 (7th Cir. 2010). *Accord Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) ("We will not disturb a credibility finding unless it is 'patently wrong in view of the cold record.'") (quoting *Imani ex rel. Hayes v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)).

In the present case, it is clear that the ALJ evaluated Plaintiff's credibility consistently with the regulations. First, as explained, he noted that Plaintiff's treatment records did not document that Plaintiff's depression was sufficiently severe as to render her incapable of working. None of the psychologists or counselors who treated or examined Plaintiff opined that Plaintiff could not work, and the few treatment and progress notes found in the record do not

suggest otherwise. In fact, the ALJ was not the only person to review the medical records and conclude that Plaintiff's allegations were inconsistent with the medical evidence. Drs. Corcoran and Shipley both found Plaintiff only partially credible (Tr. 312, 331). Two separate reviewing medical experts reviewed and affirmed their assessments (Tr. 350, 351). The ALJ properly took note of the mis-match between the objective medical evidence and Plaintiff's claims. *See* 20 C.F.R. § 404.1529(c)(2); *see also Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration."); *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("But it would be entirely sensible to say 'there is no objective medical confirmation, and this reduces my estimate of the probability that the claim is true.'").

The ALJ also noted that the limited treatment Plaintiff received was inconsistent with a disabling impairment. The ALJ noted that Plaintiff did not present for mental health treatment until December 2007 and stopped treatment in March 2008 (Tr. 18 citing Tr. 364-71). Furthermore, as the ALJ indicated, while Plaintiff resumed treatment in November 2008, she cancelled several appointments and there were large gaps of time between appointments (Tr. 18-19 citing Tr. 440-75). The ALJ properly considered this lack of consistent treatment. "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) at *7. Plaintiff claims she did not have insurance, yet she admits that she received Medicaid as of May 2007. *Id.* at 13. Thus by the time

Plaintiff received mental health treatment she had insurance, and her earlier lack of insurance does not explain why she stopped and started this treatment or why she was prone to miss appointments.

As the ALJ also noted, Plaintiff's activities of daily living undermined Plaintiff's credibility because they suggested Plaintiff's limitations did not result in the extreme limitations she alleged. The ALJ explained: "Furthermore, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant has also reported no problems with the basic activities of daily living, she is always appropriately dressed and groomed, she can do laundry, cook simple meals and wash dishes, and she enjoys spending time with her daughters and grandchildren." (Tr. 19) .

Dr. Shipley, the state agency psychologist who conducted the mental RFC assessment, made similar observations (Tr. 331). Consistent with the ALJ's assessment, Dr. Perrin, who conducted the physical consultative examination, noted, "Claimant states being able to perform basic activities of daily living" (Tr. 300). Plaintiff told consulting psychologist Dr. Heroldt that her activities included watching television, straightening up her home, doing yard work, and playing cards (Tr. 317). Playing cards requires maintaining concentration, and particularly undermines Plaintiff's claim of a disabling mental impairment. The ALJ properly considered these activities when assessing Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(3)(I).

Plaintiff argues that she was not as active around the house as the ALJ believed her to be, and she also notes that she had greater difficulties dealing with her relatives. Pl. Br. at 13. She cites a statement from her mother indicating that Plaintiff did not see her children often and that

Plaintiff did not go to church with her mother. *Id.* (citing Tr. 211). Clearly, however, Plaintiff's argument is unavailing. First, as Dr. Shipley noted, to the extent that Plaintiff did not perform more household chores and activities, she did not do so on account of her physical impairment (Tr. 331). Additionally, these purported limitations conflict with the record evidence that the ALJ cited, most notably the statements Plaintiff made to the consultative examining doctors. In fact, her mother's statement regarding Plaintiff's church attendance is inconsistent with Plaintiff's own testimony. Plaintiff testified that she attended church weekly (Tr. 65). The ALJ noted this testimony (Tr. 15).

Plaintiff also argues that the ALJ impermissibly considered her alleged drug abuse. Pl. Br. at 15. Plaintiff overstates the ALJ's finding. In a single line of the decision, the ALJ noted that Dr. Perrin noted that Plaintiff was narcotic dependent (Tr. 18 citing Tr. 299), but did not cite Dr. Perrin's observation when evaluating Plaintiff's credibility. At any rate, inconsistent statements Plaintiff made surrounding her drug abuse reflect poorly on her credibility. From her interview with Plaintiff, Dr. Becker concluded that Plaintiff's drug and alcohol abuse was in remission (Tr. 365). Similarly, an assessment from Porter-Starke Services noted that Plaintiff's substance abuse was in remission (Tr. 468). At the hearing, the ALJ noted that Plaintiff had been jailed for a drug offense, but Plaintiff denied ever having a problem with drugs (Tr. 37). The ALJ had many reasons to find Plaintiff not fully credible.

Lastly, Plaintiff argues that the ALJ should not have relied on the vocational expert's testimony in finding that a significant number of jobs existed that Plaintiff could perform. Plaintiff argues that the light jobs that the vocational expert identified were too complicated to meet the hypothetical question's restriction to simple, repetitive tasks, and that the airline

security representative position involved too much contact with the general public. Pl. Br. at 17-20. Regarding the airline security position, the record reflects that on cross examination, the vocational expert testified that while such a position may involve constant contact with the public, such contact would be superficial and thus consistent with the hypothetical question (Tr. 70).

With regard to the limitation of simple, repetitive work, Plaintiff argues that jobs with an SVP of two are too complicated to meet the ALJ's restriction. Pl. Br. at 17-19. But the vocational expert testified that his testimony was consistent with the *Dictionary of Occupational Titles* (Tr. 70). Plaintiff cites no evidence or authority even suggesting that work with an SVP of two is inconsistent with the hypothetical question. In fact, given that Plaintiff's counsel did not cross-examine the vocational expert on this point when he had an opportunity to do so at the hearing, Plaintiff has forfeited this objection. *See Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("Liskowitz argues for the first time in her reply brief that the VE should not have relied on the OEQ because it was published by a private company. But she forfeited this argument by failing to object to the VE's testimony during the hearing."); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("However, because Barrett's lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited."). The ALJ properly relied on the vocational expert's unrebutted testimony.

Accordingly, as the ALJ's decision is sufficiently supported by the record, the decision to deny benefits will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.


Entered: April 30, 2012.


s/ William C.  Lee
William C. Lee, Judge
United States District Court
